UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN UNDERWOOD,                                Case No. 1:12-cv-589

       Plaintiff,                                   Beckwith, J.
                                                     Bowman, M.J.
  v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Steven Underwood filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents one claim of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and remanded because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In August 2007, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of November 2, 2006 due to physical and mental physical impairments.  After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An administrative hearing was held on May 4, 2011.  (Tr. 28-67).  At the hearing, ALJ Gregory G. Kenyon heard testimony from Plaintiff and George Parsons, an

1

impartial vocational expert. On June 16, 2011, the ALJ Kenyon denied Plaintiff's application in a written decision. (Tr. 9-27).

The record on which the ALJ's decision was based reflects that Plaintiff graduated from high school and has past relevant work as a janitor, stamper and printing assistant (jogger). Plaintiff was born in 1963 and was 43 years old on his alleged disability onset date. Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "obesity, degenerative joint disease of the knees; hypertension; varicose veins of the lower extremities; depression and mild anxiety." (Tr. 14).

The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform sedentary work, with the following additional limitations:

> (1) occasional stooping and climbing of ramps and stairs; (2) no crouching, crawling, kneeling, or balancing; (3) no climbing of ladders, ropes, or scaffolds; (4) no work around hazards such as unprotected heights or dangerous machinery; (5) limited to performing jobs in which he would be permitted to use a cane for assistance when ambulating; (6) occasional operation of foot controls; and (7) restricted to performing unskilled simple, repetitive tasks.

(Tr. 18). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy, including such jobs as general office clerk, production planning clerk and bookkeeping

2

cashier. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 22-23).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ substituted his own opinions in evaluating the medical evidence of record and as such, his findings are not substantially supported. Upon close inspection, the undersigned finds Plaintiff's assignment of error to be well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

3

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at

least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is Not Supported by Substantial Evidence

*1. Relevant Evidence and the ALJ Decision*

In November 2006, Plaintiff left his job (indefinitely) in the printing industry due to severe right knee pain.  Thereafter, in March 2007, Dr. Marc Schneider performed arthrosporic surgery on Plaintiff's knee. (Tr. 303-346).

The record also indicates that Plaintiff suffered from venous insufficiency in both legs.  In May 2007, Dr. Alan Anneberg, M.D. noted that plaintiff had complaints of pain, aching, tiredness, heaviness, burning, numbness, and fatigue in both of his lower extremities.  Plaintiff reported that his symptoms worsen with standing and improve with elevation. (Tr. 358-367).  A little over one month later, Dr. Anneberg discussed with plaintiff the risks and benefits of ligation and radiofrequency ablation to relieve his symptoms as well as doing a phlebectomy. (Tr. 359). During this same time, Plaintiff continued post-operatively to have significant pain in his right knee. Dr. Schneider asserted in a July 5, 2007, letter that it might be necessary for Plaintiff to undergo a total knee arthroplasty. He further noted plaintiff's obesity problems and that Plaintiff weighed three hundred and two pounds.  Dr. Schneider mentioned possible lap-band surgery to help his conditions.   Dr. Schneider also indicated that Plaintiff had right knee osteoarthritis with pain. (Tr. 374).

In October 2007, Dr. Cindi Hill, M.D. reviewed Plaintiff's medical file at the request of the state agency and provided a functional assessment report.  Notably, Dr. Hill assigned Plaintiff limitations consistent with an RFC to perform light exertional work.

5

Dr. Hill noted that Plaintiff's obesity, right knee disability, and his advanced venous insufficiency are synergistic. She further noted that his venous insufficiency, aggravated by his obesity, is worsened by prolonged standing. She also indicated that Plaintiff would have no ability to engage in "crouching." (Tr. 394, 397). Additionally, Dr. Hill also noted that there were no treating or examining source statements regarding Plaintiff's physical capacities in the file. (Tr. 401).

Plaintiff continued to suffer from morbid obesity as his weight increased to three hundred and fifty-two pounds by 2010. (Tr. 453). Plaintiff was diagnosed with hypertension and testified that he was on blood pressure medications. In 2010, Plaintiff received treatment for depression and anxiety after the death of his mother. Notably, Plaintiff lived with, and cared for, his mother until her death. Initially, he was diagnosed with an adjustment disorder with mixed anxiety and depressed mood in which his therapist assigned a Global Assessment Functioning (GAF)[1] score of 45. (Tr. 438). In April of 2011, he was diagnosed with major depressive disorder and assigned a GAF score of 55.[2] (Tr. 425).

---

[1] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 34. A GAF score of 45 indicates Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work).

[2] A GAF score of 55 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

6

The record also contains treatment notes from Mahboob Noory, M.D. from August 13, 2010 though February 11, 2011. Dr. Noory treated Plaintiff for hypertension, general osteoarthritis, low back pain, and lumbago. (Tr. 457).

On February 7, 2011, Richard T. Sheridan, M.D., performed a consultative evaluation of Plaintiff for the Bureau of Disability Determination of the Rehabilitation Services Commission. In addition to completing a medical exam on plaintiff, Dr. Sheridan performed manual muscle testing and range of motion testing on plaintiff. Dr. Sheridan diagnosed exogenous obesity, hypertension, varicose veins and stasis dermatitis in both lower extremities, pancompartmental osteoarthritis, severe on the right and moderate on the left, and status post right knee arthrosporic surgery.

Dr. Sheridan concluded that Plaintiff is able to lift/carry up to ten pounds, sit/stand/walk one hour each at time, and sit/stand/walk one hour total in and eight-hour workday. He limited Plaintiff to occasional reaching bilaterally, continuous handling, fingering, and feeling, never pushing/pulling on the right, and occasional pushing/pulling on the left. Dr. Sheridan also concluded that Plaintiff can never balance, stoop, kneel, crouch, crawl, climb, or use foot controls. Thus, Dr. Sheridan concluded that Plaintiff was limited to less than sedentary work. (Tr. 408-13).

In addition, after the hearing decision was issued, Plaintiff sought and obtained another RFC evaluation performed by The Center For Physical Therapy. (Tr. 466-469). The results of this evaluation and testing were submitted to the Appeals Council of the Social Security Administration for consideration on plaintiff's request for review of the hearing decision. In this evaluation, after taking a history and performing various range of motion and strength testing, as well as testing and observing functional activities, the

physical therapist concluded that plaintiff did not possess the RFC to perform full time sedentary work. The therapist, Karen Scholl, recommended that Plaintiff's work be limited to four hours in a workday and that plaintiff avoid lifting more than six pounds on an occasional basis. She also ruled out bending, squatting, stooping, and climbing. In this June, 2011, evaluation, plaintiff's weight was listed to be 354 pounds. (Tr. 468).

In light of the foregoing, at step two in the sequential process, the ALJ found that Plaintiff has the following severe impairments: obesity; degenerative joint disease of the knees; hypertension; varicose veins of the lower extremities; depression; and mild anxiety. The ALJ determined that Plaintiff's physical impairments do not meet or medically equal the level of severity for Listing 1.02 and/or Listing 4.1. In making this determination the ALJ indicated that he considered the impact of Plaintiff's obesity on his limitation of function "including the claimant's ability to perform routine movement and necessary physical activity within the work environment." The ALJ found that Plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria outlined in Listings 12.04 and 12.06. With respect to the paragraph B criteria the ALJ found that Plaintiff's mental impairments resulted in mild limitations in activities of daily living and social functioning and moderate limitations in concentration persistence and pace. (Tr. 17). Accordingly, despite Plaintiff's impairments, the ALJ determined that he retained a RFC to perform a limited range of sedentary work. (Tr. 18).

With respect to the opinion evidence, the ALJ gave "some weight" to the findings of Dr. Hill, finding that "reducing the claimant to light exertion work does not fully account for the claimant's limited mobility due to obesity, knee impairment, and varicose

8

veins." (Tr. 19). The ALJ also gave "some weight" to the opinions of Dr. Sheridan. Specifically, the ALJ gave "more weight" to Dr. Sheridan's postural limitations in order to accommodate Plaintiff's complaints of knee joint pain and limitation of motion as well has his obesity. The ALJ, however, gave "less weight" to Dr. Sheridan's remaining limitations. Notably, the ALJ determined that Dr. Sheridan's restriction on Plaintiff's sitting for one hour at a time and for a total of one hour in an eight-hour workday was not supported by the record. (Tr. 19). In this regard, the ALJ noted that there is no evidence of any back or other similar problem that would limit Plaintiff's ability to sit. *Id.* The ALJ also disregarded Dr. Sheridan's pulling/pulling prohibition, finding instead that there is no evidence relating to upper extremity problems. The ALJ also rejected Dr. Sheridan's opinion that Plaintiff should not use foot controls because the evidence of record suggests that Plaintiff has sufficient knee joint mobility to operate foot controls occasionally. *Id* The ALJ further rejected Dr. Sheridan's limitation that Plaintiff could stand or walk for one hour at a time, finding instead that his RFC for sedentary level restriction fully accommodate Plaintiff's restricted mobility.

With respect to Plaintiff's mental impairments, the ALJ determined that Plaintiff had mild limitations in activities of daily living and social functioning and a moderate limitation in the areas of concentration persistence and pace. The ALJ further determined that Plaintiff's complaints of disabling depression since his mother died in January 2010 were not credible.

2. *ALJ's RFC determination fails to comport with Agency Regulations and Controlling Law*

At the outset, the Court notes that Plaintiff's statement of errors appears to amend Plaintiff's onset date to August 1, 2010 as the record evidence indicates that

9

Plaintiff's condition deteriorated in 2010 and 2011. Notably, in August 2010, Plaintiff's depression had increased and he was assigned a GAF score of 45, which indicates serious symptoms. The record also contains treatment notes from Dr. Noory from 2010 and 2011 indicating that Plaintiff was suffering from general osteoarthritis, low back pain, and lumbago. (Tr. 457). Thus, according to Plaintiff, Dr. Sheridan's RFC assessment in combination with the records of Dr. Noory establish substantial evidence of disability as of August 1, 2010. As such, for purposes of the judicial review of the instant appeal, Plaintiff onset date has been amended to August 1, 2010.

With respect to the ALJ's findings, Plaintiff asserts that the ALJ improperly selectively reviewed the record evidence and improperly weighed the opinion evidence in making his determination that a medical improvement occurred. Specifically, Plaintiff contends that the ALJ improperly rejected the findings of Dr. Sheridan, and instead, formulated Plaintiff's RFC based upon his own interpretation of the medical evidence. The undersigned agrees.

The ALJ must consider, and weigh, all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(c). Importantly, in weighing the medical evidence, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." Id. (internal quotations omitted); *see also Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 WL 549861, at *7, 2011 U.S. Dist. LEXIS 11925, at *7 (S.D.Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute

her own medical judgment for that of a treating physician and may not make her own independent medical findings"). In other terms, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, No. 1:10–cv–398, 2011 WL 3584468, at *14, 2011 U.S. Dist. LEXIS 90029, at *14 (S.D. Ohio June 9, 2011).

Upon close inspection, the undersigned finds that the ALJ's RFC determination was based in part, on his own non-medical opinion relating to the limitations caused by Plaintiff's impairments. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D.Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir.2000); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187-88 (E.D. Mich.1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2nd Cir.1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In this case, the ALJ's RFC determination (at least in part) was not based on any medical opinion and was clearly formulated based upon his own independent medical findings. This was clear error. Notably, the ALJ determined that the severity of the Plaintiff's knee joint complaints are undermined by his current physician's recommendation that he get "regular aerobic exercise." (Tr. 18). The ALJ's finding in

11

this regard improperly misinterprets the medical evidence. The treatment notes cited by the ALJ indicate that Plaintiff was seen by Dr. Noory on November 12, 2010 for an evaluation of his hypertension. (Tr. 460-62). With respect to Plaintiff's treatment relating to hypertension, Dr. Noory advised: (1) medical begin HCTZ in addition to his current meds; (2) dietary sodium restriction; (3) regular aerobic exercise and (4) recheck in 3 months. (Tr. 461). Additionally, the ALJ failed to mention that Dr. Noory's treatment notes from that same visit also indicate "low back and knees are tender and ROM (range of motion) limited due to pain." (Tr. 461). More importantly, the ALJ, (without relying on a physician's opinion or other medical evidence in the record) determined that a directive to perform aerobic exercise for hypertension negates Plaintiff's claim of disabling knee joint pain and/or somehow establishes that Plaintiff is able to sustain gainful work activity for 40 hours per week.[3]

Furthermore, the ALJ rejected Dr. Sheridan's opinion that Plaintiff be restricted to sitting no more than one hour at a time and/or a total of one hour per day based upon his own determination that there is no evidence of any back or other similar problem which would limit Plaintiff's ability to sit. The ALJ also rejected Dr. Sheridan's determination that Plaintiff could only stand or walk for one hour per day, asserting that "the sedentary level restrictions in this case fully accommodate the claimant's reduced mobility." (Tr. 19). The ALJ, however, fails to identify the evidence of record in support of his conclusion. To the contrary, the record evidence establishes that Plaintiff suffers

---

[3] According to SSR 96-8p, an RFC is an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing" basis. See SSR 96-8p at 28. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.; See also Sims v. Apfel*, 172 F.3d 879, 880 (10th Cir. 1999) (defining a "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule").

12

from severe knee and joint pain which is exacerbated by his obesity. As noted above Plaintiff is 5'10" and weights over 350 pounds. As such, these conditions would indicate limited mobility and difficulty sitting and standing for prolonged periods. Notably, upon examination, Dr. Sheridan noted that "pancompartmental tendernes" and "severe creiptus, synovities and effusion" of the right knee. (Tr. 420). Dr. Sheridan further noted that he "walked with a right leg-limp" and "gets up out his chair with severe difficulty." (Tr. 416). Dr. Noory's treatment records also indicate back and knee pain.

The undersigned does not dispute that it is the ALJ's prerogative to resolve conflicts and weigh the evidence of record. However, it appears in making such determination , the ALJ, in part, impermissibly acted as his own medical expert. See *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir.1983); *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir.1975). As detailed above, while an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings, which is exactly what occurred here.

The Court recognizes that the ALJ reserves the right to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 404.1527(d). Nevertheless, in assessing a claimant's RFC, the ALJ must consider all relevant evidence of record, including medical source opinions discussing the severity of a claimant's impairments. See 20 C.F.R. §§ 404.1527(d), 404.1545(a). Furthermore, this Court has stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Comm'r of Soc. Sec.*, No. 1:08–CV–00828, 2009 WL 3672060, at *10, 2009 U.S. Dist. LEXIS 102429, at *10 (S.D.Ohio Nov. 4, 2009) ("The residual

13

functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms'") (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D.Ohio 2008)); *Mabra v. Comm'r of Soc. Sec.,* No. 2:11–cv–407, 2012 WL 2319245, at *8–9, 2012 U.S. Dist. LEXIS 84504, at *20–34, (S.D. Ohio June 19, 2012). *See also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [ALJ's RFC] determination").

In addition, with respect to Plaintiff's mental impairments, the ALJ determined that Plaintiff was seen only a few times at Mental Health and Recovery in 2010 and 2011, as such, the ALJ determined that his RFC restriction for unskilled simple repetitive tasks should be sufficient to accommodate any depression or anxiety Plaintiff may experience. (Tr. 18). To the extent that the ALJ discounted Plaintiff's claimed mental impairment because he failed to seek formal treatment, such a determination was in error.

The Sixth Circuit has held that a claimant's failure to seek formal mental health treatment is "hardly probative" of whether the claimant suffers from a mental impairment, *Burton v. Apfel*, 208 F.3d 212 (6th Cir. 2000) (table), and "'should not be a determinative factor in a credibility assessment'" relating to the existence of a mental impairment. *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation")). We recognize that ALJs must be careful not to assume that a

14

patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (listing cases recognizing that a mentally ill person's noncompliance with treatment "can be ... the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse") (citations, internal quotation marks, and brackets omitted).

In sum, the Court recognizes that there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. See *Deskin,* 605 F.Supp.2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). Such is not the case here. The evidence of record shows that Plaintiff's mental and physical conditions deteriorated after the death of his mother in 2010. He suffered from depression and his weight increased to over 350 pounds, exacerbating his back and knee impairments. Moreover, the only medical opinion rendered after that date is that of Dr. Sheridan, who examined Plaintiff and provided an assessment of Plaintiff's functional limitations in February 2011. The ALJ rejected, in part, Dr. Sheridan's findings based upon his own interpretation of the medical data of record. Because the ALJ improperly substituted his interpretation of the medical evidence in place of the medical opinion so record, the undersigned finds that the ALJ's RFC determination lacks substantial support and this matter should be remanded for further proceedings.

In addition, in light of Plaintiff's amended onset date and the purported increase in his impairments since 2010, on remand, the ALJ should obtain a consultative examination and/or obtain testimony from a medical expert in order to properly determine Plaintiff's mental and physical RFC as of August 1, 2010.

### III. Conclusion and Recommendation

In light of the foregoing the undersigned finds that this matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Id.* at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits*. Id.* at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this Report and Recommendation.

   *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

STEVEN UNDERWOOD,            Case No. 1:12-cv-589

       Plaintiff,                        Beckwith, J.
                                                              Bowman, M.J.
    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).